GEORGE DeB. KEIM v. O. P. SAUNDERS.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILA-
DELPHIA COUNTY.

Argued March 29, 1888—Decided April 23, 1888.

1. Where a debtor, in the custody of the sheriff upon a writ of capias ad satisfaciendum, is discharged by the court upon filing a petition for the benefit of the insolvent laws, the sheriff has no further power over the debtor's person upon the writ in his hands.

2. On the refusal of the court, after the writ is returned, to discharge the petitioning debtor at final hearing, a voluntary surrender to the sheriff's deputy, unaccepted by the sheriff, is not a performance of the condition of the bond, and, so far as the sheriff is concerned, it goes for nothing.

3. Under the acts of March 30, 1831, P. L. 228; April 14, 1835, P. L. 232, and February 14, 1867, P. L. 196, the sheriff is not the keeper or jailer of the Philadelphia county prison, either personally or by deputy, and is not liable for an escape therefrom.

4. There are cases where the sheriff has been held liable for the escape of a prisoner confined for debt in the county jail, and there is no doubt of such liability, when the sheriff is the actual keeper of the jail or controls it by means of a deputy appointed by him: per Mr. Justice PAXSON.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 267 January Term 1888, Sup. Ct.; court below, No. 308½ December Term 1884, C. P. No. 3.

On January 28, 1885, a summons in debt was issued in an action by Oscar P. Saunders and Oscar P. Saunders, executor of Sarah J. Saunders, deceased, in the right of said executor, against George deB. Keim.

The narr. set forth the recovery on March 8, 1883, by Oscar P. Saunders and Sarah J. Saunders, his wife, in right of the wife, of a judgment for $2,300.24 against one William Quigg, in a certain action of trespass, which judgment as to $1,847.30 thereof remained unsatisfied; that the plaintiffs therein, on March 26, 1883, sued out a capias ad satisfaciendum, on which writ the defendant in this suit on March 27, 1883, did take and

arrest the said William Quigg and then and there kept and detained him in custody, and afterwards on the same day did discharge him upon his entering bail to apply for the benefit of the insolvent laws; that the said William Quigg so proceeded in his application for the benefit of the insolvent laws that on February 29, 1884, his final petition therein was heard and refused by the court; that thereupon the same day the said William Quigg did voluntarily surrender himself to the custody of the defendant, the sheriff as aforesaid, who on the same day suffered and permitted the said William Quigg to escape and go at large from and out of the custody of him the said sheriff, whereby an action hath accrued, etc.

To this narr. the defendant pleaded: (1) Nil debet. (2) That if an escape was permitted from said jail, after the said William Quigg surrendered himself as in said declaration averred, this defendant is in no wise liable therefor, as the said jail was not in his legal custody nor the persons discharging prisoners therefrom the servants of this defendant, and this he is ready, etc.

The plaintiffs demurred to the second plea above set forth and·for cause stated that said plea was indefinite, uncertain, set forth no new matter, set forth conclusions of law, and defendant was liable in law for the escape of said William Quigg from the county prison, under the circumstances in said narr. alleged.

At the trial on November 28, 1887, before REED, J., it was made to appear in the plaintiffs' case:

That on March 27, 1883, William Quigg, being in the custody of the defendant, then the sheriff of Philadelphia county, by virtue of the writ of capias ad satisfaciendum recited in the narr., made application to the Court of Common Pleas for the benefit of the insolvent laws, and having filed a bond in conformity with the statute and approved by the court, was thereupon discharged from the custody of the sheriff, who made return of said writ accordingly, and that said application was so proceeded in that on February 29, 1884, the application by said Quigg for his final discharge was refused by FINLETTER, P. J., sitting in cases in insolvency.

That on the same day of his discharge the attorney of Wil-

liam Quigg sent for the sheriff and his deputy came into court. The deputy, the same one who had arrested Quigg on the ca. sa., was told that Quigg surrendered himself in performance of the condition of his bond, and he took Quigg to his own office, then to another office, and finally said they could not keep him or send him to prison, because they had no commitment.

William Quigg, called for plaintiffs, testified : I did go down that day to prison. I went into the prison. I saw Superintendent Perkins at the jail. We had a conversation, Perkins, myself, and Mr. Clegg, his clerk. I presented them this paper in the handwriting of my counsel :

In re Insolvency
of                                C. P. 3.
William Quigg.                213 March Term 1880.
Discharge refused this day by FINLETTER, P. J., February 29, 1884.

The above named William Quigg voluntarily surrenders himself in the above matter to the jail of the city and county of Philadelphia, this same day, February 29, 1884.

WILLIAM QUIGG.

Mr. Perkins told Mr. Clegg that he might let me out, that he would not keep me. Clegg let me out.

The plaintiffs, upon the facts in substance above stated, rested their case. Thereupon the defendant requested the court to charge :

1. That the surrender of the principal to the county jail released the sheriff as well as the sureties, and the verdict must be for the defendant.[2]

2. That the custody of persons committed to the county jail by an order of court is exclusively in the inspectors of the county prison, and the sheriff of this county is not liable for an escape or discharge therefrom, and the verdict must be for the defendant.[3]

The court, REED, J., refused to instruct as thus requested by the defendant, and, the cause being submitted to the jury, a verdict was returned for the plaintiffs for $2,338.85.

A rule to show cause why a new trial should not be had, on December 19, 1887, was discharged, REED, J., delivering the following opinion :

Opinion of Court below.

It is claimed by the plaintiffs in this case that the defendant, the former sheriff of Philadelphia county, is liable for an escape, because it was shown at the trial that the plaintiffs' debtor, arrested upon a ca. sa. and released under his bond to take the benefit of the insolvent laws, had been refused his discharge by the court, and had thereupon, in the court-room surrendered himself to the sheriff; that further, the latter had let the insolvent go free, and that it was also proved that the insolvent had, at the county prison, renewed his offer of surrender, which the defendant refused to accept. The jury having found a verdict for the plaintiffs, the defendant, on the other hand, contends that there was no evidence of an acceptance of the surrender in court, and that it was the duty of the inspectors of the county prison and not that of the sheriff to accept a surrender made at the jail, and that, therefore, the rule for a new trial should be made absolute.

The sheriff, to whom the writ of arrest was addressed, must, it is clear, account for the custody of his prisoner; and the argument that he does so satisfactorily when he shows a consignment of the latter to the county jail by the sheriff has no application to a case where he distinctly refuses to accept a surrender made to him in compliance with law by an insolvent whose discharge has been refused by the court. The insolvent's duty was to surrender himself at the jail of the county, though the sheriff could accept that surrender at any other place. No commitment was necessary or proper, and, unless a forced construction is put upon the act of February 14, 1867, P. L. 196, the custody of the insolvent should have been resumed by the sheriff as under the original writ of capias ad satisfaciendum: Mullen v. Wallace, 2 Gr. 391.

While, as has already been said, the sheriff might well be justified in transferring the custody of the insolvent to the authorities of the jail, and while they also might be obliged to accept such duty at the sheriff's hands, they certainly have no right to meddle with his responsibilities without a distinct authorization from him in a manner prescribed by law. Whatever changes have been made in the manner of keeping jails in this county, there has been no alteration in the law as to the sheriff's liability under writs directed to him; and the cases cited by the plaintiff's counsel, rest upon a principle

which, not only then, but also now, holds the person addressed in a writ of arrest, whether sheriff or other officer, as the one responsible, first and last, for the safekeeping of the prisoner arrested thereunder, at least until a proper disposition by the arresting officer is made of his charge, as by lodging the latter in a prison provided for the purpose, whether such officer be a keeper of the prison or not.

Giving the defendant the benefit of the doubt as to whether in this case a surrender was accepted in the court-room, and upon this point the deposition of Mr. Aaron Thompson certainly favors the plaintiffs' contention, it is clear from the testimony that there was ample notice to the sheriff of the insolvent's intention to surrender himself at the prison; and from Mr. Salter's testimony it is proved that he, himself, the sheriff's deputy, plainly refused to accept the prisoner's surrender when so made. Under such a state of facts we do not think that the sheriff's duty, dating from the earliest history of the law, and recognized in this commonwealth by comparatively recent decisions, Ranington v. Bennett, 3 Phila. 343, is done away with by a statute which enacts no more than "That the inspectors of the Philadelphia county prison are hereby authorized to make such alterations, in the building known as the debtor's apartment, as, in their judgment, may be required, for the purpose, management, or discipline of the said prison; and they are hereby authorized to provide and furnish apartments, or an apartment, for the uses and purposes for which the debtors' apartment is by law now appropriated; and from and after the first day of December next, one thousand eight hundred and sixty-seven, the said inspectors shall appoint the keeper of said apartment, if, in their judgment, a keeper shall be required: Act of February 14, 1867, P. L. 196.

The doctrine of liability for an escape is, it is true, in many of its aspects, technical, narrow, and harsh, but the legislature alone can cure the evils of an antique code which has outlived its usefulness. The law still supposes that the body of a debtor may be a satisfaction for the debt, and courts cannot decide that this never is or never should be true in fact.

The court then directed judgment to be entered for the plaintiffs on their demurrer, and judgment being so entered, the defendant took this writ, assigning as error:

Arguments.

1. The entry of judgment for the plaintiffs on their demurrer to the plea.

2. The refusal of the defendant's first point.[2]

3. The refusal of the defendant's second point.[3]

*Mr. David W. Sellers* (with him *Mr. William Grew*), for the plaintiff in error:

1. The surrender of himself by Quigg fully performed the condition of his bond: Saunders v. Quigg, 112 Pa. 546; Marks v. Bank, 114 Pa. 490. But by that surrender the insolvent was not put into the legal custody of the sheriff, as under the statutes the "jail of the said county" is not under the charge, care or control of the sheriff, but under the management of a board of inspectors: Act of March 30, 1831, P. L. 228; Act of April 14, 1835, P. L. 232; Act of February 14, 1867, P. L. 196.

2. The act of 1867 was passed by reason of the decision of this court in Commonwealth v. Christopher, 3 Gr. 375. It was claimed in that case that the debtor's apartment was a separate institution from the jail. That act abolished the distinction. Mullen v. Wallace, 2 Gr. 389, does not sustain the position of the court below. In that case the validity of a surrender to prison was questioned and sustained. In Ranington v. Bennett, 3 Phila. 343, the suit was not against the sheriff, nor can it be told from the report whether it was not a bond given in a county in which the sheriff was in fact the keeper of the jail.

*Mr. Bradbury Bedell*, for the defendants in error:

1. It is the sheriff's duty to keep every prisoner taken by him by writ of execution in salva et arcta custodia, for if the sheriff allow a defendant arrested to go at large for the shortest time, either before or after the return day of the writ, without the consent of the plaintiff, it is an escape for which he is answerable: Watson on Sheriffs, 135; Shewel v. Fell, 4 Y. 47; Karch v. Commonwealth, 3 Pa. 271; Smith v. Commonwealth, 59 Pa. 320; Hopkinson v. Leeds, 78 Pa. 396.

2. The bond, on an application to apply for the benefit of the insolvent laws, is but a part of the machinery, its purpose being temporary enlargement while prosecuting the necessary measures for relief: Mason v. Benson, 9 W. 287; Bartholo-

mew v. Bartholomew, 50 Pa. 194; Mullen v. Wallace, 2 Gr. 389; Ingraham, Insolvency, 29. The return made by the sheriff that the defendant was discharged on entering bail, etc., exonerated him only until the writ was revived by a surrender.

3. The statute and the condition of the bond say that the insolvent shall surrender himself at the county jail. The reason is that the county jail is the place where debtors are usually confined. It was for the sheriff's convenience that the insolvent was required to surrender himself at the jail, but experience demonstrated that the sheriff was less inconvenienced by a surrender in open court, and it became the rule, as in this case, to make the surrender there : Ingraham, Insolvency, 30 ; Mullen v. Wallace, 2 Gr. 389.

4. In the case at bar there was a valid and complete surrender in open court, and defendant refused to keep Quigg in custody after he had accepted a surrender, simply because he said he had no commitment. What commitment could he have? Not a bail-piece, because his bondsmen, not being bail to the sheriff, had no power to take one out: Ingraham, Insolvency, 31; Heilner v. Bast, 1 P. & W. 267 ; Kelly v. Stepney, 4 W. 69 ; Smith v. Barker, 6 W. 508. The court had no power to commit him : Heilner v. Bast, 1 P. & W. 267 ; Mullen v. Wallace, 2 Gr. 389. The insolvent was not obliged to furnish a commitment: Saunders v. Quigg, 112 Pa. 546. The plaintiff's hands were tied: McDonough's Case, 37 Pa. 275 ; Bartholomew v. Bartholomew, 50 Pa. 194. The sheriff did have a commitment, and that was the writ of ca. sa. on which he had arrested the defendant. So this court decided in Mullen v. Wallace, 2 Gr. 389.

5. Is the sheriff liable for an escape from the county jail? The question would not be asked, after Commonwealth v. Christopher, 3 Gr. 375, were it not for the act of 1867, referred to. But, while that act might possibly deprive the sheriff of the appointment of the keeper of the debtor's apartment, it certainly does not deprive him of the custody of that apartment, or relieve him from the common law liability for the safe keeping of defendants arrested on final process : Commonwealth v. Christopher, 3 Gr. 375 ; Commonwealth v. Butt, 2 Ohio 348 ; Campbell v. Hampson, 1 Ohio 119 ; Smith v. Hart,

2 Bay 395; Burrell v. Lithgow, 2 Mass. 526; Hopkinson v. Leeds, 78 Pa. 396.

OPINION, MR. JUSTICE PAXSON:

It is among the admitted facts of this case, that one William Quigg, was in March, 1883, in the custody of the defendant below, at that time high sheriff of the county of Philadelphia, upon a writ of capias ad satisfaciendum issued by Oscar P. Saunders and wife ; that he subsequently made application for the benefit of the insolvent laws of the state, gave bond in conformity with law, was discharged from the custody of said sheriff, who made return of that fact to the writ; that upon the hearing in the insolvent court his discharge was refused ; that on the same day he went to the Philadelphia county prison and surrendered himself to the keeper thereof, which surrender the warden refused to accept, and permitted, or rather directed him to leave, which he did.   This suit was brought against the defendant as for an escape, with the result of a verdict for the plaintiff of $2,338.85 upon which the court below entered judgment.

Saunders v. Quigg, 112 Pa. 546, was a suit upon the bond given by Quigg when he applied for the benefit of the insolvent laws, and we held that Quigg's surrender at the county jail was a full compliance with the bond, and his sureties were discharged.   The only question now is, whether there was an escape for which the sheriff was liable.

The sheriff returned the writ of capias ad satisfaciendum as follows : " C. C.   And the defendant discharged on entering bail in the office of the prothonotary of the Court of Common Pleas for the benefit of the insolvent laws."   This writ when so returned was a dead writ and the sheriff had no further control over the person of Quigg; he had no process in his hands at any time thereafter by which he could have detained him for a single instant.   The surrender of the debtor at the jail is voluntary in ease of his sureties, and no one can compel him to do so unless it be the latter.   Even the court cannot commit him except for fraud.   When Quigg's discharge was refused by the Common Pleas, the condition of his bond was " that he shall surrender himself to the jail of the said county." Hence the alleged surrender to a deputy sheriff in court was a

nullity; it did not fulfil the condition of his bond; it was not accepted by the sheriff, and goes for nothing. Had the sheriff accepted such surrender, the case might have been different. The fact is, that Quigg surrendered himself at the jail for the reason, and the only reason, that the sheriff refused to accept his surrender.

That there was an escape was not disputed. But was the sheriff liable therefor? There is no doubt that an escape, according to the common law since the day of Rolle's Abridgment, has uniformly fixed the jailor, who can avail himself of nothing as matter of defence but an act of God or the common enemy: Green v. Hern, 2 P. & W. 167. There are cases not only in England but in this state where the sheriff has been held liable for the escape of a prisoner confined for debt in the county jail, and there is no doubt of such liability where the sheriff is the actual keeper of the jail, or controls it by means of a deputy appointed by him. Such is the case in nearly all the counties in this state. This rule is sufficiently technical and severe where the sheriff is the jailor; to apply it to cases where he has no actual control of the jail would be unjust and unreasonable. Where such officer has been held liable for an escape he has been held qua jailor not qua sheriff. It is to the common jail that the insolvent surrenders; it is the keeper of that jail who is liable for an escape.

It is manifest from an examination of the acts of 30th March, 1831, P. L. 228, and 14th April, 1835, P. L. 232, that the sheriff is not the keeper or jailor of the Philadelphia County Prison. Nor has he any control of it. The acts referred to place it in the care of a board of inspectors; in the language of the first section of the act of 1835, it "shall be managed by a board of inspectors;" and by § 2, the inspectors shall annually appoint a superintendent, a matron for the female department, a physician for the institution; the inspectors shall fix the salaries of the keepers and all other persons employed there, and make such rules and regulations for the internal government of the prison as may not be inconsistent with the principles of separate confinement. By § 4, the superintendent, under the advice and direction of the board, shall appoint the keepers and the necessary servants, and dismiss them whenever he thinks proper. By § 6 the keepers shall obey all

legal orders given by the superintendent, and all rules established by the board of inspectors, etc. etc.   In all these and many other matters specified in the acts referred to, the sheriff is wholly ignored; he cannot appoint the superintendent, an inspector, a keeper, or even a servant.   He does not control the prison either personally or by deputy.

It was held, however, in Commonwealth v. Christopher, 3 Gr. 375, that, notwithstanding the acts of 1831 and 1835, the sheriff of Philadelphia has the custody of the debtors' apartment and the appointment of its keeper.   This case was decided in 1856.   The act of February 14, 1867, P. L. 196, provides that: " The inspectors of the Philadelphia County Prison are hereby authorized to make such alterations in the building known as the debtors' apartment, as in their judgment may be required for the purpose, management, or discipline of the said prison; and they are hereby authorized to provide and furnish apartments, or an apartment, for the uses and purposes for which the debtors' apartment is by law now appropriated; and from and after the first day of December next, one thousand eight hundred and sixty-seven, the said inspectors shall appoint the keeper of said apartment, if in their judgment a keeper shall be required."

The object of this act is plain.   The separate building known as the debtors' apartment, owing to the increased humanity of our laws, became of little use for the confinement of unfortunate debtors; hence a small space therein, "apartments, or an apartment," for the use of insolvents was all that was thought to be necessary; the inspectors were authorized to utilize the remainder for ordinary prison purposes, and the control of the whole thereof was given to them, even to the appointment of a keeper should one be necessary.   This swept away the last vestige of the control of the high sheriff of Philadelphia over the county prison.   The only reason why a sheriff was ever held responsible for the escape of a debtor from a county prison was that he was the keeper of such prison; cessante ratione legis cessat ipsa lex.   It is possible that some one was responsible for this escape; we do not say who is so responsible; we only say that the sheriff is not.

Judgment reversed.