## O. P. SAUNDERS v. HOWARD PERKINS.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 29, 1891—Decided February 16, 1891.
[To be reported.]

(*a*) A defendant, against whom a judgment had been recovered in an action for a tort, was arrested by the sheriff of Philadelphia county upon a capias ad satisfaciendum, and immediately released on entering bail to apply for the benefit of the insolvent laws. He made such an application, and, after hearing, the court refused to discharge him.

(*b*) Thereupon, the defendant went to the county prison, informed the keeper of the prison of the facts of the case, and presented to the keeper a written statement signed by himself, reciting the refusal of his application for discharge and declaring that he surrendered himself to the jail. The keeper refused to receive and detain him, when he went away.

(*c*) The keeper of the Philadelphia county prison is not a deputy of the sheriff, but is appointed annually by the board of prison inspectors, under the act of February 14, 1867, P. L. 196. He gives no official bond. The sheriff has no custody or control of the jail. When prisoners are brought to the jail by the sheriff or his deputies, a certified copy of the process is lodged with the keeper:

1. Had the keeper of the prison also been sheriff, such a surrender might have made him chargeable with the detention of the insolvent, so that his refusal to accept the surrender would have rendered him liable for an escape, as in such case he would have had in his hands the original capias upon which the insolvent was arrested, with official knowledge of his application under the insolvent laws.

2. But, as the keeper had no record, writ, or paper of any kind, which bore authenticity, or upon its face justified the insolvent's detention, had no knowledge, except from the person's own statements, that he was an insolvent whose discharge had been refused, and was not bound to act upon such statements, his refusal to receive the insolvent was not a breach of duty.

3. At all events, such refusal did not render the keeper of the prison liable, in an action of debt, under the statutes of Westminster 2d (13 Edw. I. cap. 2, and 1 Rich. II. cap. 12), for the amount of the debt, interest and costs of the judgment, under which the insolvent had previously been arrested by the sheriff upon the writ of capias ad satisfaciendum.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, Mc-
COLLUM and MITCHELL, JJ.

Statement of Facts.

No. 54 January Term 1891, Sup. Ct.; court below, number and term not given.

On January 28, 1885, Oscar P. Saunders, and Oscar P. Saunders executor of Sarah J. Saunders, deceased, in the right of said executor, brought debt against Howard Perkins, under the statutes of Westminster 2d (13 Edw. I., cap. 2, and 1 Rich. II. cap. 12),* to recover from the defendant the amount of a certain judgment in favor of the plaintiff and against one William Quigg.

The plaintiff's statement of claim averred, in substance, that Oscar P. Saunders and Sarah J. Saunders, his wife, in right of the said Sarah J. Saunders, recovered a judgment for $2,300.24, on March 8, 1883, in an action of trespass to No. 213 March Term 1880, in the Court of Common Pleas No. 3 of Philadelphia county, against William Quigg; that on March 21, 1883, the plaintiffs sued out a writ of capias ad satisfaciendum and delivered the same to the sheriff of said county, who arrested the said William Quigg thereunder, and on the same day discharged him upon the entry of bail to apply for the benefit of the insolvent laws; that on February 29, 1884, the application of Quigg for a discharge under the insolvent laws was refused, whereupon he surrendered himself to and into the county jail or prison of said county, of which the defendant Perkins was the superintendent or keeper, and that on the same day the said defendant, against the will of the plaintiffs, voluntarily suffered and permitted the said Quigg to escape from said jail and to go at large, etc., "whereby an action has accrued to these plaintiffs to have and demand of the said defendant the said sum of $2,300.24. Yet the said defendant, although often requested, has not paid said sum," etc.† Issue.

---

* See Robert's Digest, 10, 400.

† Before bringing the present action, the plaintiff successively brought suit against the sureties in the insolvency bond: Saunders v. Quigg, 112 Pa. 546; the sheriff: Keim v. Saunders, 120 Pa. 121; and the inspectors of the county prison: Saunders v. Smith, 132 Pa. 180. In the first case mentioned, it was held by the Supreme Court that Quigg's voluntary surrender was a discharge of the obligation of his bond. In each of the other cases, the defendants sued were held not liable to the plaintiffs for a voluntary escape.

Statement of Facts.

At the second trial, on February 1, 1887, the plaintiff, having put in evidence the records of the judgment and the insolvent proceedings mentioned in the statement of claim, called William Quigg, who testified in substance that the witness, after the refusal of his petition for a discharge as an insolvent, went the same day to a deputy sheriff and offered to surrender himself, but the deputy refused to receive him; that the witness, in company with one of his bondsmen and two friends, then went to the county prison, saw the defendant, Perkins, and informed him of all the facts connected with the case, presenting to one of the under-keepers the following paper, which the under-keeper then handed to the defendant:

"In re Insolvency of William Quigg. Common Pleas 3, March Term 1880, No. 213.

" Application for discharge as an insolvent.

" Discharge refused this day, by Judge Finletter; February 29, 1884.

" The above named William Quigg voluntarily surrenders himself in the above matter to the jail of the city and county of Philadelphia, this same day, February 29, 1884.

" WILLIAM QUIGG."

Quigg testified, further, that Perkins, after talking with him, examining the paper, and consulting with some one else at the prison, refused to keep the witness, on the ground that there was no proper process upon which to detain him, whereupon the prison gate was unlocked by one of the defendant's deputies, and the witness and his companions went away. Several other witnesses having testified in corroboration of Quigg, the plaintiff called the defendant Perkins, who testified that he was superintendent of the county prison, which was the only jail in the county, having been appointed as such by the board of prison inspectors, without bond; that the sheriff had no control over the prison except for conducting executions; that all commitments to the prison by the courts, magistrates, etc., were addressed to the witness as keeper of the county prison, and all prisoners in the jail were under his care and custody; that, when the sheriff or his deputy would bring a prisoner to the jail, the officer would retain the original writ and give to the witness an attested copy, which the witness would file away, and if the witness did not have such process

Arguments.

he would not keep the prisoner. The defendant also testified to the same effect as Quigg, as to what occurred when the latter came to the jail on February 29, 1884.

The testimony being closed, the plaintiff requested the court to instruct the jury:

1. That by the uncontradicted testimony which is admitted by the defendant, William Quigg made a valid surrender to the county jail on February 29, 1884.

Answer: Refused.[1]

2. That upon such surrender William Quigg was in custody under the capias ad satisfaciendum issued out of this court as of March Term 1880, No. 213.

Answer: Refused.[2]

3. That upon such surrender it was the duty of the defendant to detain and safely keep said William Quigg, until he was discharged by due course of law.

Answer: Refused.[3]

4. That the defendant's refusal to detain and safely keep said William Quigg, and permitting him to leave the jail, was a voluntary escape suffered by the defendant.

Answer: Refused.[4]

5. That, by reason of such voluntary escape, the defendant became liable to the plaintiff for the amount due by said William Quigg, upon the judgment under which he was arrested by said capias ad satisfaciendum.

Answer: Refused.[5]

The court then instructed the jury to find a verdict for the defendant.[6]

The jury rendered a verdict for the defendant as directed. A rule for a new trial having been discharged and judgment entered, the plaintiff took this appeal, assigning for error:

1–5. The refusal of plaintiff's points.[1 to 5]

6. The instruction to the jury to find for the defendant.[6]

*Mr. Bradbury Bedell*, for the appellant:

1. The plaintiff's first point should have been affirmed, as this court had already determined that Quigg made a valid surrender of himself: Saunders v. Quigg, 112 Pa. 546. The second point was based upon the decision in Mullen v. Wallace, 2 Gr. 389. The insolvent had a right to choose whether he

Arguments.

would let the creditor have his body or his bond, and, upon his surrendering himself, was in custody under the original capias, which was sufficient for his detention, no commitment being necessary : Mullen v. Wallace, supra ; Saunders v. Quigg, supra ; Commonwealth v. Deacon, 8 S. & R. 48 ; McCullough v. McCullough, 67 Pa. 30. The plaintiff could not have procured a commitment; his hands were tied and he could do nothing, as the insolvent had to be the actor : McDonough's Case, 37 Pa. 275 ; Bartholomew v. Bartholomew, 50 Pa. 194. The jailer would have run no risk by detaining under a voluntary surrender.

2. Under the act of March 30, 1831, P. L. 228, and the act of February 14, 1867, P. L. 196, the defendant, as the keeper of the jail, had the custody of Quigg as a surrendered insolvent. This court has already ruled that the sheriff had no custody or control of any portion of this jail : Keim v. Saunders, 120 Pa. 121 ; and that the prison inspectors are not jailers : Saunders v. Smith, 132 Pa. 180. The non-detention of Quigg and suffering him to depart constituted a voluntary escape: Keim v. Saunders, supra ; Smith v. Saunders, supra. " It is the keeper of the jail who is liable for an escape : " Keim v. Saunders, supra. The statutes 13 Edw. I. cap. 2, and 1 Rich. II. cap. 12, under which this action is brought, are in force in Pennsylvania : Shewel v. Fell, 4 Y. 47 ; s. c. 3 Y. 17 ; Report of Judges, 3 Binn. 595. Originally drawn to apply only to the sheriff and the warden of the Fleet, they have been extended by equitable construction to cover all sheriffs, jailers and keepers of all prisons : Impey on Sheriffs, 176 ; Plummer v. Witchott, 2 Lev. 158 ; s. c. 2 Mod. 119 ; 3 Bac. Abr. 407 ; Odes v. Clark, 5 Mod. 413 ; 1 Coke's 2d Inst., 377, 382 ; 2 Idem 466. See further, as to the jailer's duty and liability : Duncan v. Klinefelter, 5 W. 141 ; Green v. Hern, 2 P. & W. 167.

*Mr. Hampton L. Carson* (with him *Mr. J. Levering Jones* and *Mr. Alfred I. Phillips*), for the appellee :

1. If there were an escape in this case, the defendant might be liable therefor in an action on the case, in which form of action the insolvency of the debtor could be pleaded in mitigation of damages, and the verdict would be for nominal damages only : Shuler v. Garrison, 5 W. & S. 455 ; Duncan v. Kline-

felter, 5 W. 145; Shewel v. Fell, 3 Y. 17. But, in the action of debt under the statutes, the recovery must be of the debt and costs due from the insolvent debtor. The statutes upon which this action is brought cannot be extended so as to include this defendant. They have never been applied to jailers who were not in point of fact deputies of sheriffs. The theory upon which the broad interpretation which has been given them is based, is that the sheriff and his deputies are charged in debt for the escape of a defendant held on a capias ad satisfaciendum, because, while so held, the defendant is in execution on final process addressed to the sheriff.

2. No case can be found in Pennsylvania where an action of debt for permitting an escape has been brought, except when the process, under which the insolvent was in custody, was in terms addressed to the officer sued. Indeed, in most of our cases the action was brought on the official bond of the sheriff, or by scire facias sur recognizance under the act of March 28, 1803, 4 Sm. L. 45, and § 6, act of June 14, 1836, P. L. 638; Smith v. Commonwealth, 59 Pa. 327; Wolverton v. Commonwealth, 7 S. & R. 272; Scarborough v. Thornton, 9 Pa. 452; Karch v. Commonwealth, 3 Pa. 269; Snyder v. Commonwealth, 1 P. & W. 94. The defendant in the present case was not the sheriff or the sheriff's surety; nor was he the sheriff's deputy: Keim v. Saunders, 120 Pa. 121. No process was ever directed to him, charging him with the custody of the insolvent upon final execution. He is a total stranger to the process of the court. He is annually appointed by the prison inspectors without bond. How then can he be held in debt?

3. The defendant's position is held under the act of February 14, 1867, P. L. 196, which is in pari materia with all the other acts relating to the Philadelphia county prison. To impute to that act the intention to make such sweeping changes in the law as to legislate the appointee of the inspectors into the place of the sheriff, so far as his common law and statutory liabilities are concerned, and charge with unthought of responsibilities an officer unknown to the law, who is not even a ministerial officer of the court, is inadmissible: Commonwealth v. Christopher, 3 Gr. 379. The act relates solely to the management, discipline, and interior arrangement of the prison. The inspectors are not jailers, and are not responsible as the

Arguments.

sheriff is: Saunders v. Smith, 132 Pa. 180.   How, then, can their appointee and subordinate be held, at least unless there be process addressed to him making it his duty to receive and hold a prisoner, or unless a prisoner be handed over to him by one who has such process and leaves an official copy of it as a voucher?

4. Statutes in derogation of the common law, and conferring a new jurisdiction, must be construed strictly : East Union Tp. v. Ryan, 86 Pa. 465.   The power of a sheriff to imprison a man is a special one, being derived only from a writ directed to him, and therefore it is strictly and absolutely confined within the terms of the direction contained in the writ.   The only theory upon which an insolvent debtor can be permanently detained in jail is, that he is in execution on final process, and after a surrender he is held on the original capias ad satisfaciendum : Ingraham on Insolvents, 29 ; Mullen v. Wallace, 2 Gr. 389.   But that writ is in terms addressed to the sheriff, and in Philadelphia county the jailer knows nothing of it until an attested copy is lodged in his hands.   It is undoubted that Mr. Perkins had neither official nor actual knowledge of any of the previous proceedings in the case, and he was not bound to receive Quigg upon his verbal statements, or upon the unofficial written scrap of paper presented.   The sureties on Quigg's bond could not surrender him : Ingraham on Insolvents, 31.

5. It was not unreasonable or a breach of duty, for the defendant to refuse to admit a total stranger, unaccompanied by a sheriff's deputy or some process of the court.   Should the jailer indiscreetly admit strangers, able-bodied confederates might thus obtain admission and liberate prisoners.   The jailer would then undoubtedly be liable : Wheeler v. Hambright, 9 S. & R. 390 ; Green v. Hern, 2 P. & W. 167.   It would be harsh, indeed, to hold him liable for not admitting strangers to the jail, and yet to hold him liable for negligence in admitting them, should evil result.   If there was an escape at all in this case, which is more than doubtful, it is clear that the insolvent was in the custody of the sheriff under the capias, and was therefore never in that of the defendant, not having been properly delivered to him by the sheriff.   Even if the defendant be treated as the sheriff's deputy, there must first be a recovery

against the sheriff, and then he would be liable in case, not to the plaintiff, but to his principal. But the sheriff has been discharged, and how can his deputy be held?

OPINION, MR. CHIEF JUSTICE PAXSON:

We decided in Saunders v. Quigg, 112 Pa. 546, that, when William Quigg surrendered himself to the warden or keeper of the Philadelphia county prison, it was a compliance with the condition of his bond, and discharged his surety, notwithstanding the prison authorities refused to detain him. In Keim v. Saunders, 120 Pa. 121, we held that the sheriff was liable for Quigg's escape, for the reason that, under the peculiar laws regulating the Philadelphia county prison, the sheriff was not the keeper thereof, and had no control over it. And in Saunders v. Smith, 132 Pa. 180, we held, for the reasons there given, that the inspectors of the prison were not liable for such escape. This suit was brought against Howard Perkins, the superintendent of said prison, for an escape, under the statutes of Westminster 2d, in which the plaintiff claimed to recover the amount of debt, interest, and costs in the original capias against Quigg.

The point upon which this case rests was not decided in either of the above-cited cases. We have decided there was a valid surrender as between Quigg and the plaintiff, and that the condition of the bond was complied with, and the surety discharged. We also said there was an escape, a question of fact about which there is no dispute. The question now is entirely different. It arises between the plaintiff in the writ of capias ad satisfaciendum and the superintendent of the prison, and we are called upon to say whether the surrender was sufficient to hold the latter to the peril and liability of an escape.

It appears from the undisputed evidence that on the day the Court of Common Pleas refused to discharge Quigg as an insolvent, he proceeded to the county prison with one or two friends, neither of whom was an official, and handed to an under-keeper a paper of which the following is a copy:

"In re Insolvency of William Quigg. Common Pleas, 3. March Term, 1880, No. 213.

"Application for discharge as an insolvent.

"Discharge refused this day, by Judge Finletter; February 29, 1884.

" The above-named William Quigg voluntarily surrenders himself in the above matter to the jail of the city and county of Philadelphia, this same day, February 29, 1884.

"WILLIAM QUIGG."

Quigg at the same time informed the under-keeper of the facts surrounding the case. The defendant says in his testimony: " He (Quigg) showed me a paper; I think the one in evidence is the paper he handed me; I gave him to understand that I would not receive him, as it was not an official commitment; he asked me what was to be done, and I said he would have to go out. I declined to receive him then, and the gates were unlocked, and he went out."

It thus appears by the uncontradicted testimony that the defendant refused to receive Quigg for the reason, and the only reason, that he had no sufficient authority to justify him in detaining him. The refusal was based, not upon a mistake of the law, which, in theory at least, is no excuse, but upon the lack of evidence that Quigg was an insolvent debtor whose discharge had been refused by the insolvent court. It is true, he was informed so by Quigg, but is the keeper of the county prison bound to receive every one who claims admission, under the penalty of being mulcted in damages to the extent of several thousand dollars? For any legal evidence before him, Quigg might have merely desired a night's lodging at the expense of the county. We must not lose sight of the fact that the defendant is not the sheriff; he is merely the superintendent of the prison, and is accustomed to receive inmates only upon a formal commitment, or the order of the sheriff or some other officer. He had no knowledge, and no knowledge could be imputed to him, that Quigg was an insolvent, beyond the mere statement of Quigg himself. He had no record, no writ, no paper of any kind which bore authenticity, or which, upon its face, justified Quigg's detention. If the keeper had also been the sheriff, as is the case in many counties in the state, and formerly was so in all, there would have been some reason why such a surrender as this would make him liable for an escape. In such case, the sheriff would have in his hands the original capias upon which the insolvent was arrested, with official knowledge of his application for the benefit of the insolvent laws.

We have not held in either of the cases above mentioned that this defendant was liable for this escape. His case has not been before us until now. We have not before been called upon to say whether Quigg's surrender was sufficient to hold the defendant liable. It would be a harsh ruling—harsh beyond all precedent—to enforce the old rule of the common law against him under the circumstances. The rule itself is a relic of the barbarism of a past age, and is not essential to, nor is it in harmony with, our present humane insolvent laws. It would be a wise act for the legislature to sweep it away. While it stands, it is our duty to enforce it in a clear case, but we must not be asked to do so in a doubtful one. I do not think it would have been applied in this case had it occurred during the darkest hours of imprisonment for debt, because the facts do not bring it within its reason.

When the learned judge below instructed the jury that Quigg's surrender was not valid, he evidently meant it was not good as against the defendant. His language must be understood as applicable only to the case upon trial before him, not to another case, which had been passed upon by this court. Viewed in this light, his ruling was free from error. Nor does it harm the plaintiff; he has merely lost what he never had.

Judgment affirmed.

Mr. Justice CLARK and Mr. Justice WILLIAMS noted their dissent.

On March 9, 1891, a motion for a re-argument was refused.