Shippen, C. J.
in his charge to the jury, observed, that this possibly might be a hard case on the sheriff. But the policy of the law has introduced general regulations, which must necessarily govern all cases, though in the event, individuals may be affected thereby with some degrpe of rigor. All officers in public employments, who receive emoluments for their services, are bound to perform their relative duties under certain penalties. The office of sheriff is of the utmost importance to the due administration of both criminal and civil justice in governments constituted like our own. ■ It is his duty to perform his several *functions with firmness and integrity, and faithfully to r*. execute all process directed to him, without favour or [*21 affection. He has no power arbitrarily to constitute himself a judge of the rights of suitors, and disappoint judgments and executions. Should such a practice prevail, and receive the sanctions of courts and juries, the injurious consequences attending it are very evident.
The common law and such of the statute laws of England as were enacted before the settlement of the late province, applicable to our local situation, have been adopted here, both before and since the revolution. 1 Dall. St. Laws 133, 723. 2 Dall. Rep. 394. They form part of our code, under certain modifications sanctioned by the judicial authority. The English decisions, however, do not universally comport with our circumstances. Such is the case as to promissory notes, wherein we *21 do not adopt their strictness of notice of non-payment by the drawers, so as to charge the indorsers. So the sheriffs in England are bound to see to the sufficiency of their gaols ; but it is presumed, that here, if they or their gaolers are in no default, but use every due and proper precaution to prevent their prisoners from escaping, and yet an escape takes place from the manifest insufficiency of the gaol, (as in the instance of log buildings of the frontier counties, &c.) the penalty could not be exacted; more particularly, where the commissioners of the county have been previously apprised of such defects.
At common law, case lies for an escape, wherein a jury assess damages, according to all the existing circumstances. Under the statutes cited at the bar, the plaintiff is entitled to recover in an action of debt for the escape of his debtor out of execution against the sheriff or gaoler, “ in the same manner as “he could have done against such debtor.” We have always understood, that these statutes have extended to this commonwealth, and that they have uniformly considered as beneficial general provisions, suitable to the state of our country. We can see no circumstances in the present instance which will justify a departure from the settled and established rules of law, but are bound to pronounce it to be an escape, for which the defendant is answerable for the whole debt and costs. It is the province of the court to judge in what cases the rules of the English common law should be relaxed. Should juries assume this power, the necessary consequence would be, that the utmost uncertainty must ensue from the fluctuating opinions of different sets of jurors in different counties. The strong inclination of our minds is, that the statutes of Westm. 2, and 1 Ric. 2, c. 12, extend here, and that the plaintiff in point of law ought to recover *his wife debt in the present action. But the court *22] will not be ashamed to retract their 'opinions at a future day, if they should find that they have conceived them erroneously.
The jury retired and staid together all night. Next morning they came into court, and said they found it impossible to unite in a verdict. They asked the court, if they might not judge of the escape and moderate the sum according to all the circumstances. They were told, the escape was a simple question of law on the facts being ascertained, binding on the court and their consciences. The court however recommended a compromise to the counsel, declaring that they felt as men for the defendants’ situation, though they would not shrink from their duty as judges. This was unavailing.
The court then told the'jury, that as at present informed, they persisted in their former opinion, that a verdict ought to be rendered for the plaintiff for the whole debt and costs.
The jury then again retired, and in the course of half an *22 hour, found a verdict for the plaintiff for 933l. 14s. 7d., which the court publicly approved of.
Cited in 4 S. & R. 267 in support of the proposition that it is the province of the Court to judge in what cases the rules of the English Common Law should be relaxed.
Referred to in 2 P. & W. 169.
Cited in 5 Watts 144 to show that in debt, for the escape of one held in execution, the jury, if they find for the plaintiff, must find the, whole debt and costs.
Mr. T. Ross, pro quer. Mr. Condy, pro def.
This appeal was argued on three different days in the Supreme Court, viz.: December 30th, 1802; March 17th, 1803; and December 23d, 1803 ; and the judgment was afterwards affirmed by the whole court, March 24th, 1804.
Judgment was rendered for the plaintiff, on the verdict, without prejudice to the defendant, on appeal on the legal points. 1st, Whether the parol evidence as to the time of the arrest ought not to have been received ? 2d, Whether the statutes of Westm. 2, and 1 Ric. 2, c. 12, do extend to Pennsylvania? 3d, Whether the jury could not have awarded less than the original debt and costs ?