## 1 Duncan *against* Klinefelter.

State laws have no operation, *proprio vigore*, upon the prócess or proceedings of the courts of the United States. ·Hence an associate judge of the state court cannot discharge from arrest, under the insolvent laws of the state, one who is in custody upon process from the United States ·court.

If a jailer suffer a prisoner to escape, without the sheriff's knowledge, and the sheriff be thereby made responsible, the jailer is liable to him in an action on the case. Nor will it relieve the jailer from liability that he took advice and acted with good faith in the matter.

If an action for an escape be brought in debt, the jury, if they find for the plaintiff, must find the whole debt and costs; but if brought in case, they may find such damages as they think proper.

If a payment be made by the sheriff, as a compromise of the action against him, without consulting the jailer, the amount recovered from the sheriff is not the legal measure of damages which he is entitled to recover from the jailer.

ERROR to the common pleas of *York* county.

This was an action on the case by Andrew Duncan against Adam Klinefelter, in which the following special verdict was found.

. In 1830 the plaintiff was commissioned sheriff of the county of York and appointed the defendant jailer and keeper of the prison of said county. In 1832 suit was brought in the circuit court of the United States for the eastern district of Pennsylvania, by Isaac Darst and others, citizens of Ohio, upon a covenant made in York county, Pennsylvania, to said plaintiff, by Jacob Roth, then and always a citizen of Pennsylvania, and judgment was obtained against said Roth for. 5,465 dollars ·44 cents.

On the 6th of December 1832, Jacob Roth was arrested by the marshal of the eastern district of Pennsylvania, by virtue of a *capias ad satisfaciendum* upon said judgment, and on the same day was. committed by said marshal to the custody of the defendant, who was then jailer and keeper of the prison of York county by virtue of his aforesaid appointment. On the same day the defendant in said *capias ad satisfaciendum*, Jacob Roth, made application to George Barnitz, one of the associate judges of the court of common pleas of said county, for the benefit of the insolvent laws of Pennsylvania, and gave bond to the plaintiffs in said *capias ad satisfaciendum*, to appear in court, and comply with the provisions of the said laws: and the said judge approved said bond, and granted an order to the defendant to discharge said Roth from prison agreeably to the directions of said insolvent laws, in the form always practised in York county. Said defendant took counsel of two counsellors at law, and was by both advised that he had no right to detain said Roth. In pursuance of which said order and advice of counsel the defendant on the said 6th day of December 1832, permitted the said Roth to leave said jail and go at large, and made return thereof to the said court of common

pleas, according to the act of assembly. The defendant in so doing acted with good faith, diligence, and fidelity. Afterwards, to wit, on the 7th of December 1832, said Roth voluntarily returned into custody on the request of the defendant, and was subsequently discharged agreeably to the provisions of the act of congress of 1800, relative to insolvent debtors. The said Roth, also, in pursuance of the above mentioned application and bond, complied with the provisions of the insolvent laws of Pennsylvania, and was discharged. In 1833 the plaintiff was sued in the circuit court of the United States by the plaintiffs in said *capias ad satisfaciendum*, for the escape of the said Roth, and in 1834 compromised said suit, and paid said plaintiff 1050 dollars, in full satisfaction for said escape. If the plaintiff is entitled to recover the 1050 dollars, then judgment to be entered for him for said sum with interest from the 1st of May 1834, but if said 1050 dollars is not the legal measure of damages, then judgment to be entered for plaintiff generally, and a writ of inquiry of damages to issue. If the plaintiff is not entitled to recover, then judgment to be entered for defendant.

The court below rendered a judgment for the defendant.

*Fisher* and *Lewis*, for plaintiff in error.
*Evans* and *Chapin*, for defendants in error.

The opinion of the Court was delivered by

SERGEANT, J.—The power of the associate judge of the court of common pleas of York county to discharge Roth from custody under the *capias ad satisfaciendum*, issued by the circuit court of the United States, on giving bond to take the benefit of the act of assembly of the state of Pennsylvania, for the relief of insolvent debtors, is not sustainable. The act of assembly on this subject, passed the 28th of March 1820, authorises the debtor to apply to the president, or any associate judge of the court of common pleas of the county in which he is arrested, and to give bond with such security as is required and approved by the said judge, conditioned to appear at the next court of common pleas for said county to take the benefit of the insolvent laws of this commonwealth, &c., on which the sheriff is to discharge him. But the provisions of the acts of assembly relate only to debtors held under executions issued from the state courts. It has never been supposed that they intended to give, or could give to the state courts or judges, power to control the process of the courts of the United States in matters within the jurisdiction of the latter. In Beers *v.* Haughton, *Sup. Co. U. S.*, January term 1835, Mr Justice Story, in delivering the opinion of the court, says, that state laws have no operation *proprio vigore* upon the process or proceedings of the courts of the United States, for the reasons so forcibly stated by Mr Justice Johnson, in delivering the final opinion of the court in Ogden *v.* Saunders, 12

[Duncan v. Klinefelter.]

*Wheat.* 370, and Mr Chief Justice Marshall, in delivering the opinion of the court in Wayman *v.* Southard, 10 *Wheat.* 1, and by Mr Justice Thompson, in delivering the like opinion in the Bank of the United States *v.* Halstead, 10 *Wheat.* 51. But it is insisted that although the act of assembly may not, of itself, affect suits in the courts of the United States, yet by act of congress the state law has been adopted, and its provisions introduced into the judicial code of the United States. The act of congress which is relied on, is that of the 19th of May 1828, (*Pamph. L.* 56,) which in section three provides, that writs of execution and their final process issued on judgments and decrees rendered in any of the courts. of the United States, *and the proceedings thereupon,* shall be the same, (except their style,) in each state respectively, as are now used in the courts of each state, &c. And the argument of the defendant is, that the right of the debtor to give bond and be discharged was part of the proceedings upon the execution by virtue of the act of assembly of 1820, at the time this act of congress of 1828 was passed, and, therefore, the act of congress recognises and adopts it. There can be no doubt, that although acts of assembly are not, in themselves, of any efficacy as to proceedings in the courts of the United States, yet if congress, by its enactments, adopts them, they become so far obligatory. But the defect of the 'argument of the defendant is, that the act of congress of 1828 no where gives authority to the judge of a state court to interfere with, or control, executions issued from the courts of the United States, or proceedings thereupon. If the state law can be applied in the way contended for, it must be by the tribunal in which the execution and proceedings are had, unless an express sanction be given by act of congress to the exercise of such jurisdiction by the state judges. In the case of Beers *v.* Houghton, which has been strongly urged by the defendant's counsel, the application of the state laws to the case was made by the judge of the circuit court of the district of Ohio, who, under the authority given by the *proviso* in the third section of the act of congress of 1828, made a rule of court, that under neither mesne nor final process, should any individual be kept imprisoned, who, under the insolvent law of the state, had for such demand been released from imprisonment: and it was held by the supreme court of the United States, that this rule protected the bail of a defendant thus released, against a recovery on his recognizance in the same circuit court of the United States. It was upon the validity and effect of the rule of court that the case was decided. In the present instance, no such rule of court has been made by the circuit court of the United States in which the *capias ad satisfaciendum* against Roth issued, authorizing a discharge of a person who had given bond to one of the state judges to take the benefit of the insolvent laws of Pennsylvania. As then the exercise of such authority by the state judges is not recognised by the act of congress, nor conferred by any rule of the circuit court under the proviso,

and it cannot be derived from the act of assembly, it follows that none such existed, and that the discharge was unauthorised. It is fully settled, that an officer is not justified in obeying the order of a judge, or court, having no jurisdiction in the matter. 10 *Co.* 76, *b.* 8 *Serg. & Rawle* 424. The only question that remains is, whether the jailer is liable over to the sheriff for the loss he has sustained by the escape which the former permitted.

The jailer is the sheriff's deputy or servant, appointed to perform the duties appertaining to that office. The sheriff is liable for his acts, and he is responsible over to the sheriff for a non-performance of duty by which the sheriff is injured. The most important of the duties of the jailer, and one which he assumes to perform by the acceptance of the office, is to keep safely all prisoners lawfully committed to his custody, until discharged by due course of law. As the servant is liable to his master for breach of duty, in consequence of which a loss is sustained by the master, so if the jailer suffer a prisoner to escape, and the sheriff is thereby made responsible, the jailer is liable to him in an action on the case. The sheriff may, and often does take a bond of indemnity, with security, from the jailer, to perform the various duties which by law are imposed upon him, and to save him harmless from the breach of them—but this is done for the security of the sheriff, and without such bond, the law makes the jailer liable upon the promise implied in his undertaking the office, for all that his duty requires him to perform. 1 *Rolls. ab.* 98; *Cro. Eliz.* 349; 8 *Johns.* 210. The circumstances mentioned in the case stated, that the defendant took advice of counsel, and acted with good faith, diligence and fidelity, do not seem to be sufficient to exempt him from liability. A loss has been sustained, which must be borne by one of these parties: and it ought to be borne by him whose act or default has occasioned the loss, and not by him who had no connection with it. Where one undertakes an official duty, and fails in the performance of it, his ignorance or mistake of the law, or the honesty of his motives and conduct, do not exempt him from civil responsibility, where damage is sustained by his non-performance. The defendant's act was entirely his own; the sheriff was not consulted and had no participation in it, so far as appears.

On the question of the amount which the plaintiff is entitled to recover, a considerable difficulty arises from the manner in which the case stated is drawn up. The sum paid by the present plaintiff to the plaintiff in the execution was 1050 dollars, after suit had been brought in the circuit court for the escape. It is not stated whether that suit was debt or case; and a material difference between the two exists. In *debt*, for the escape of one held in execution, the jury, if they find for the plaintiff, must find the whole debt and costs. 3 *Yeates* 17; 4 *Yeates* 47. But in *case*, they may find such damages as they think proper. The mere payment of the sum of 1050 dollars, would not, of itself, make that sum the measure of damages,

[Duncan v. Klinefelter.]

because the compromise was made by the plaintiff without the consent or knowledge of the defendant that we know of. As a general position, the sum of 1050 dollars thus paid, is not the legal measure of damages; even if it be the true standard of what the plaintiff on the execution would have recovered against the sheriff. Circumstances might exist between the sheriff and the defendant, which would lessen or take away altogether the damages claimed of the defendant. At the same time it is proper to remark, that the circumstances mentioned in this case are not of that character. In this uncertainty it is, perhaps, the safest course to refer the question of damages to the jury of inquiry, in whose power it will be to give to the plaintiff the whole money paid, with interest, or less, if there be legal ground to diminish the amount, and, in the mean while, judgment to be entered for the plaintiff generally.

Judgment reversed, and record remitted that judgment may be entered for the plaintiff generally, and a writ of inquiry of damages issued.