## Commonwealth ex rel. v. Elliott, Sheriff

*Nathan Routman*, for relator.

*Alvin R. Isenberg* and *Leo H. McKay*, for defendant.

ROWLEY, P. J., January 30, 1941.—This is a quo warranto proceeding to test the sheriff's right to retain his residence in the county jail.

To the matters set out in plaintiff's application for the writ, the sheriff filed an answer. Plaintiff demurred to

defendant's answer, thereby admitting all matters of fact properly averred in the answer.

From the pleadings we make the following

## Findings of fact

1. Alex Elliott, defendant, was elected to the office of Sheriff of Mercer County on November 7, 1939, for a term of four years. On January 1, 1940, he was duly sworn into office, and thereupon assumed the duties of sheriff.

2. On January 1, 1940, Sheriff Elliott, following the custom of his predecessors in office, established his residence in the county jail and accepted the custody of all prisoners therein. The sheriff has continued his residence in the county jail to this date.

3. Residence in the jail is of pecuniary value to the sheriff.

4. On the date of the election of defendant to the office of sheriff, Mercer County was a county of the sixth class.

5. The statute which transferred the control of the county jail and the care of the prisoners therein, in counties of the fifth class, from the sheriff to the county commissioners, and which provided for the appointment of a warden was enacted May 10, 1921, P. L. 470, before the election of defendant to the office of sheriff. A warden so appointed is required to reside in the jail building.

6. By proclamation of the Governor of Pennsylvania duly recorded on January 6, 1941, Mercer County became a county of the fifth class.

7. Following the proclamation of the Governor, declaring Mercer County to be a county of the fifth class, the county commissioners undertook to assume control and management of the jail, and by unanimous resolution appointed Samuel Leyshock warden thereof.

8. Said appointee filed the required security, and thereafter, on January 9, 1941, demanded of Sheriff Elliott custody of all prisoners in the county jail and possession of the premises within the jail occupied by the sheriff as his residence.

9. Sheriff Elliott refused to comply with the demand.

10. Sheriff Elliott to this date continues to exercise the rights and powers of warden of the Mercer County jail.

## Discussion

Sheriff Elliott bases his asserted right to retain his residence within the jail upon article III, sec. 13, of the Constitution of Pennsylvania, which reads as follows:

"No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment."

The instant controversy presents four main points for consideration, viz:

1. On November 7, 1939, the date of Elliott's election, did the Sheriff of Mercer County have the right as such to maintain his residence within the county jail?

2. If so, did such right constitute an emolument of the office of sheriff?

3. If so, can the officer's right to such emolument be adjudicated in the instant proceedings?

4. The law providing for appointment of a warden to reside in the jail, in counties of the fifth class, being in effect when Sheriff Elliott was elected to office, can he now complain that such law diminished the emoluments of the office after his election?

We shall discuss each of the preceding questions in order.

Considering first, the right of the Sheriff of Mercer County to reside in the jail as of November 7, 1939:

The Act of April 15, 1834, P. L. 537, divided the Commonwealth of Pennsylvania into counties, including Mercer County, and authorized the county commissioners, with the approval of two succeeding grand juries, to erect at the county seat the necessary buildings for the purposes of a county jail. The present jail building was constructed in 1868, and includes a number of rooms which have been set apart and continuously occupied by the sheriff as his residence.

At the argument we indicated that the primary question was whether residence in the jail was a right established in law, which the sheriff acquired by his election. The constitutional provision protects only such compensation and emoluments as are established by law. The provision does not apply to compensation fixed by order or agreements of boards or other authorities such as county commissioners: Crawford County v. Nash, 99 Pa. 253; McCormick v. Fayette County, 150 Pa. 190.

Able and industrious counsel have cited no statute which expressly provides for residence of the sheriff in the jail, nor have we found any express enactment. But in 50 C. J. 335 it is declared:

"The sheriff is jailer ex officio, and has a common law right to the custody and control of the public prisons, and of the prisoners confined therein."

In Commonwealth v. Ferguson, 3 Pitts. 68, the Court of Quarter Sessions of Allegheny County said:

"The Sheriff . . . is the highest officer in any county. . . . The jail is his domicil, and the grounds appurtenant thereto are part and parcel of the curtilage . . ."

In Rhoads v. Luzerne County, 10 Luz. L. R. 233, the foregoing declaration was quoted with approval.

In McNees v. Armstrong County, 20 Pa. C. C. 105 (1897), it was said (p. 107):

"It is the duty of the sheriff to keep safely the prisoners committed to the county prison, and he has the right either to occupy the jail himself, or have the same kept and the prisoners detained by a warden or deputy."

Section 28 of the Act of April 5, 1790, 2 Sm. L. 531, authorized the sheriff to appoint a jailer with the approval of the court, but it became customary for sheriffs to make such appointments without the court's approval. In Duncan v. Klinefelter, 5 Watts 141, such practice was recognized as legitimate.

In Scarborough v. Thornton, 9 Pa. 451 (1849), the Supreme Court said (p. 453):

"In some of the counties of the commonwealth, the sheriff himself resides in the jail . . . and superintends

personally the custody of the prisoners. . . . In other counties, the custom has been for the sheriff to appoint a jailer . . ."

In the days when imprisonment for debt was not unusual, it was repeatedly held that the sheriff was liable to the creditor for the escape of a debtor from the jail.

In Keim v. Saunders, 120 Pa. 121, it is recited (p. 129) :

"There is no doubt that an escape, according to the common law since the day of Rolle's Abridgement, has uniformly fixed [the liability upon] the jailor, who can avail himself of nothing as matter of defence but an act of God or the common enemy: Green v. Hern, 2 P. & W. 167. There are cases not only in England but in this state where the sheriff has been held liable for the escape of a prisoner confined for debt in the county jail, and there is no doubt of such liability where the sheriff is the actual keeper of the jail, or controls it by means of a deputy appointed by him. *Such is the case in nearly all the counties in this state.*"    (Italics supplied.)

In more recent years the tendency has been to relieve the sheriff in larger counties of the control of the jail by substitution of a warden or similar provision.

The new provision has been noted by the courts as vastly diminishing the responsibility of the sheriff for custody of prisoners. In Keim v. Saunders, supra, p. 130, it was said that the substituted management of the jail "swept away the last vestige of the control of the high sheriff of Philadelphia over the county prison. The only reason why a sheriff was ever held responsible for the escape of a debtor from a county prison was that he was the keeper of such prison . . ."

The present jail building was so constructed as to include a sheriff's residence. The duty of the sheriff is to care for the prisoners in the place provided by the county for their detention. This duty is affected to some extent by the facilities which the county provides; consequently that duty is to care for the inmates of the jail to the extent of the facilities.

The responsibility of the sheriff to prevent escape is undoubted, but he is likewise required to feed the prisoners, to minister to the sick among them, to guard them against the peril of fire, and to protect them from injury by fellow-prisoners. For failure so to do, the sheriff might be subjected to a civil suit for damages, nor are we prepared to say that the county would be free of liability for the sheriff's negligence in this regard. Provision for the sheriff's residence within the county jail implies that the citizens were aware of the responsibility of the sheriff and of the county. It must be presumed, therefore, that the citizens conceived that full performance of these duties required the continuous presence of the sheriff, or his representative, in the jail. Provision for the sheriff's residence in the jail having been made, we are of the opinion that he was bound to constant attendance upon the prisoners, which is possible only by residence within the jail. We are of the opinion that the duty of the sheriff, either personally or by deputy, to be constantly in attendance upon the jail carries with it the reciprocal right to residence therein. This interpretation has been sanctioned by long usage.

The county solicitor cites County v. Bridenhart, 16 Pa. 458, as authority that the county commissioners are not required to provide a residence for the sheriff. In that case the commissioners undertook to provide a separate sheriff's residence apart from the jail, while a new jail was being built. Under those circumstances the court held that the commissioners were not required to find a residence for the sheriff. That case does not rule the point presented by the instant proceedings.

In County of Wayne v. Taylor, Sheriff, no. 117, January term, 1937, Court of Common Pleas of Wayne County, Judge Swoyer ruled that the sheriff has, under the common law, the right of residence in the jail, "and that the county commissioners are required to furnish the sheriff (as keeper of the jail) residential quarters either in the county prison or upon the curtilage thereof."

Both the legislature and the courts have noted that, except in the larger counties, the custom has been for the sheriff to reside in the jail. Indeed the Act of May 10, 1921, P. L. 470, sec. 1, under which the commissioners acted in appointing the warden, concludes in these words: "and the sheriff shall no longer be furnished a residence in said [jail] institution."

For the reasons above recited, we are constrained to hold that on November 7, 1939, the date of the election of Alex Elliott to the office, the Sheriff of Mercer County had the right, established by law, to maintain his residence in the county jail.

We now come to the second question: Did such a right of residence constitute an emolument of office?

Webster defines emolument as a profit from office, compensation, perquisites, fees or salary, advantage, or benefit.

Our conception of the term emolument as used in the constitutional provision, "salary or emolument", is compensation that is only incidental to the principal salary or compensation. There is authority for treating the word "emolument" as a synonym for "salary", but use of the word in conjunction with "salary" seems to imply an indirect, or indefinite compensation that is only incidental to salary, the principal, direct, definite compensation.

Obviously the right of residence in the jail is an advantage, a pecuniary benefit to the sheriff.

We are mindful of the provision in section 1 of the Act of May 11, 1925, P. L. 559, fixing the salary of a sheriff in a sixth class county, which reads:

"The sheriff in said counties shall not be entitled to any additional fees or compensation for the care and maintenance of prisoners, but the actual expense for such care and maintenance . . . shall be paid by the county from the county treasury upon itemized bills rendered from time to time."

Previous to the above-cited act the sheriff was paid a specified amount per day or per week for maintenance

of the prisoners. In Apple v. Crawford County, 105 Pa. 300, plaintiff had been elected sheriff when the law required the county to pay the sheriff 50 cents per day for boarding each prisoner. During the sheriff's term the law was repealed, and thereafter the county proposed to pay $2.50 per week as fixed by the court under the authority of an earlier law. The contention of the county was that the sheriff was merely an agent to disburse county funds in boarding the prisoners, and was allowed no profit therefrom, consequently such an allowance was not an emolument of office.

The Supreme Court declared the allowance was an emolument, saying (p. 303):

"The service which it compensates is official service and is compulsory. If the amount fixed be an insignificant sum, it would constitute a serious objection to an acceptance of the office, whereas if it be sufficient to afford a moderate profit it would constitute an inducement to the citizens to accept the office. It enters, therefore, probably quite as much as salary or fees, into the considerations which determine the acceptance or rejection of the official position to which it is annexed. Why should it not be protected as well as salary or fees?"

(It will not be seriously contended that free residence within the jail was not some inducement to acceptance of the office of sheriff.)

In our opinion the above-quoted act merely divested the right of the sheriff to fees or compensation for maintenance of prisoners, beyond the actual cost thereof. If it be argued that by implication the sheriff is deprived of residence within the jail, the answer is that the implication is not strong enough to destroy the right of residence which is supported by the common law. A right which rests upon the common law is as fully protected by the Constitution as one which has the support of a statute.

We have had due regard for article XIV, sec. 5, of the Constitution, which requires salaried county officers to pay all fees into the treasury, and for the Act of June 1,

1933, P. L. 1141, sec. 2, which provides that all fees and commissions charged by a salaried sheriff shall belong to the county. In our opinion neither of these provisions, nor their interpretation as expressed in Schuylkill County v. Wiest, 257 Pa. 425, is pertinent to the questions before us.

It must, therefore, follow that such right of residence is an emolument of office.

The third question is: Whether the sheriff's right to this emolument can be adjudicated in this proceeding.

The county solicitor cites Commonwealth ex rel. v. Wehr, 17 D. & C. 689, where it was held (p. 696) :

"The purpose of this action [quo warranto] is to try respondent's title to office. His right to the salary or emoluments is not in question and cannot be raised or adjudicated in this suit. If it is supposed that his right to the salary subsists, although he lacks title to the office, that contention must be raised in another proceeding."

The case cited above decided that, upon the creation of a separate orphans' court, the register of wills becomes the clerk of the new court, and the term of the person elected to that office, prior to the establishment of the separate court, thereupon ends. The court there refused to consider whether ouster of the officer offended the constitutional prohibition against diminishing the salary or emoluments of a public officer, during his term.

It was not necessary to pass upon the right of the ousted officer to the salary in order to decide which of the contending persons was entitled to the office.

But that is not the situation here. The petition for the writ avers:

"Ninth: The said Alex Elliott refused to turn over custody of the prisoners and *possession of all the premises housing the jail and residence to the said Samuel R. Leyshock*."

Furthermore, the Act of 1921 provides: "The warden shall reside in the jail building."

Thus it is clearly apparent that the right of residence within the jail is directly involved in this proceeding.

Plaintiff in this proceeding asks us to oust the sheriff from his residence in the jail; consequently the right of the sheriff to such residence is directly involved, and must be squarely passed upon. If plaintiff were asserting only the right of the county commissioners to control and management of the jail, apart from dispossession of the sheriff from the residential quarters, a different question would be presented.

Counsel for plaintiff says: "In the last analysis the ultimate question to be decided by the court is: Under the legislation governing fifth class counties, in whom is reposed the responsibility for the control and management of the county jail?"

The answer is to be found in section 1 of the Act of 1921. Nor is the sheriff's right of residence in the jail necessarily inconsistent with government and management thereof by the county commissioners. In our opinion the county commissioners may prescribe the duties of the sheriff as warden or they may relieve him of all such duties, but they may not dispossess the sheriff from his residence. It seems unnecessary to add that the sheriff cannot decline to perform the duties of warden while clinging to his residence in the jail.

We agree with plaintiff that the legislature has the right to increase or transfer the duties of an office.

The fourth question is whether the sheriff is deprived of the protection of the constitutional prohibition against diminishing the salary or emoluments of a public officer during his term of office, inasmuch as the Act of 1921, providing for a warden in counties of the fifth class, was in effect when Sheriff Elliott was elected.

Section 9 of the Act of 1921 reads as follows:

"This act shall take effect on the first Monday of January, in the year one thousand nine hundred and twenty-two: Provided, nevertheless, That in counties where the term of sheriff does not begin on the day this act becomes effective, and where he acts as warden or keeper of the county jail or prison, *this act shall not take effect until the expiration of the term of office* of the sheriff then act-

ing as jail or prison warden or keeper." (Italics supplied.)

Thus the legislature took notice of the constitutional prohibition. It seemed to assume, however, that only the sheriff in office when the statute was passed was protected by the constitutional provision, but that a sheriff elected after the effective date of the statute would take office subject to the terms of that law and, therefore, could not complain that a "law" diminished his compensation during his term.

The change in emoluments complained of here does not occur by reason of a law passed since the sheriff's election, but because the recent census and the Governor's proclamation advanced the county into a new class.

Much might be said in support of a contention that the constitutional provision only prohibited a change in compensation by an act of the legislature, were it not for the fact that our Supreme Court has decided the point.

In Commonwealth ex rel. v. Walter, 274 Pa. 553, it was held (p. 557) :

"The *salary of the elective officer is fixed as of the date of his election, and no alteration in the amount thereof is permissible under the Constitution,* whether it be attempted by a new law passed thereafter, or by the application of the provisions of an earlier statute directing the payment of a larger sum, when a county has a greater population." (Italics supplied.)

To the same effect is In re Bowman's Appeal, 111 Pa. Superior Ct. 383.

It is, therefore, obvious that the sheriff's emoluments are protected against alteration by application of the Act of May 10, 1921, P. L. 470, notwithstanding that such act was in force on the date of his election.

From the foregoing findings of fact and discussion we draw the following

*Conclusions of law*

1. On the date of the election of Alex Elliott to the office, the Sheriff of Mercer County had the right as such to maintain his residence in the county jail.

2. Such right constituted an emolument of office.

3. The right to such emolument may be adjudicated in this proceeding.

4. The salary and emoluments of Alex Elliott were fixed as of the date of his election to the office of sheriff, and no alteration of the amount thereof is permissible by application of the provisions of the Act of 1921 which provides for appointment of a warden to reside in the jail building.

5. Alex Elliott is lawfully in possession of the residential portion of the county jail.

Our conclusions do not declare the Act of 1921 unconstitutional, but merely restrain the operation in the instant case of such provisions as are inconsistent with the constitutional prohibition.

### Order

And now, January 30, 1941, this matter came on for argument, and same was orally argued by counsel and written briefs submitted, whereupon, after due consideration, it is ordered, adjudged, and decreed that the writ be discharged and that judgment be entered for Alex Elliott, defendant.