## Krasinski v. Gorman

*Anthony B. Trambley,* for plaintiffs.
*B. R. Copollo* and *J. H. Cartwright,* for defendants.

DISCUSSION

GREINER, P. J., March 25, 1965. — Three basic issues are raised for determination:

I.

In a county of the seventh class, in whom is the government, management and control of the county jail or prison and the safekeeping, care, maintenance, discipline and employment of the prisoners therein vested, the sheriff or the county commissioners?

II.

In a county of the seventh class, who has the authority to appoint the keepers and other employes, including matron, of said jail, the sheriff with the approval of the county salary board or the county commissioners?

III.

In a county of the seventh class, does the sheriff and his family have the right, by virtue of his office, to re-

side in the county jail residence quarters, or do the county commissioners have complete control of the use and occupancy of such jail residence quarters?

We shall consider each of these questions in the above order.

I

Basically, the determination of all three questions involves the application and interpretation of The County Code of August 9, 1955, P. L. 323, sec. 2328, 16 PS §2328, as amended by section 1 of the Act of September 19, 1961, P. L. 1476, relied upon by the commissioners, and the Act of May 11, 1949, P. L. 1191, sec. 1, 61 PS §419.1, relied upon by the sheriff, both of which are quoted in plaintiff's petition. . . . The last cited Act 359, of May 11, 1949, P. L. 1191, sec. 1, unless repealed or otherwise superseded, directs that in every county of the sixth, seventh and eighth classes, the government, management and control of the county jail or prison, the safekeeping, care, maintenance, discipline and employment of the prisoners therein, *is vested in the sheriff of the county and the officers and employes appointed by him.* The County Code of August 9, 1955, art. XXIX, sec. 2901, specifically sets forth a long list of acts and parts of acts and all amendments thereof that were repealed to the extent specified. Act 359 of May 11, 1949, P. L. 1191, sec. 1, was not so specified and, therefore, was not specifically repealed. Did the legislature intend to repeal or otherwise supersede the subject section other than by specific repeal? We think not.

Pages 1 to 16, inclusive, of volume 16, Purdon's Pennsylvania Statutes Annotated, contain a preface or commentary to The County Code, the Act of August 9, 1955, P. L. 323, by Burt R. Glidden, Legislative Counsel, Pennsylvania Legislative Reference Bureau. At pages 8 and 9, he states:

"While the basic law for the administration of county affairs is found in the new County Code, many very important functions of county officers are carried in other laws. The most important of these functions are those connected with all elections in the county; the assessment of persons and property for taxation for the county and the cities, boroughs, towns and townships within the county; the collection of municipal and tax claims; the collection by county officers of moneys for the Commonwealth, and the issuance of state licenses, such as hunting licenses, fishing licenses, dog licenses, etc.; the administration of county institution districts; *the government and regulation of jails and other correctional institutions, and the commitment thereto and the maintenance and care of prisoners or inmates;* civil and criminal procedures; recording of deeds, mortgages and other instruments; fees of county officers and salaries of elected county officers; and the administration of the county employes retirement system." (Italics supplied)

On page 16, he states:

"The sheriff, historically the chief administrative and law enforcement officer of the county, at present in Pennsylvania is wholly an official of the courts, charged with the duty of serving its processes and executing and enforcing its decrees."

This commentary on the intent of the legislature with respect to The County Code is well founded in the code itself. Section 103 of said County Code of August 9, 1955, P. L. 323, specifically sets forth excluded provisions. It provides:

"This act does not include any provisions of, and shall not be construed to repeal: . . .

"(12) Any law relating to the government and regulation of jails, prisons and other correctional institutions and the commitment thereto, and maintenance and care of prisoners or inmates therein."

This section 103, 16 PS §103, contains 21 enumerated excluded provisions from The County Code, being bodies of law relating to, or affecting the administration of counties of the third to the eighth class.

In addition, section 104(c) of the same County Code provides:

"All acts and parts of acts of Assembly relating to counties, or to particular classes of counties, in force at the time of the adoption of this act, and not repealed hereby, shall remain in force in the same manner and with the same effect as prior to the adoption of this act": 16 PS §104.

To further develop the intent of the legislature with respect to the management and control of the seventh class county jail, it is important to review the common law and successive legislative enactments relating thereto. In Commonwealth ex rel. v. Elliott, Sheriff, 40 D. & C. 665 (1941), President Judge Rowley, of Mercer County, in an exhaustive and most able opinion, establishes the duties, responsibilities and privileges of the sheriff in counties of the sixth, seventh and eighth classes. We quote from his opinion, commencing at page 668:

"Able and industrious counsel have cited no statute which expressly provides for residence of the sheriff in the jail, nor have we found any express enactment. But in 50 C. J. 335, it is declared: 'The Sheriff is jailer ex officio, and has a common law right to the custody and control of the public prisons and of the prisoners confined therein.' In Commonwealth v. Ferguson, 3 Pitts. 68, the Court of Quarter Sessions of Allegheny County said: 'The sheriff . . . is the highest officer in any county. . . . The jail is his domicile, and the grounds appurtenant thereto are part and parcel of the curtilage. . . .'

"In Rhoads v. Luzerne County, 10 Luz. L.R. 233, the foregoing declaration was quoted with approval.

"In McNess v. Armstrong County, 20 Pa. C.C. 105 (1897), it was said (p. 107) : 'It is the duty of the sheriff to keep safely the prisoners committed to the county prison, and he has the right either to occupy the jail himself, or have the same kept and the prisoners detained by a warden or deputy.'

"Section 28 of the Act of April 5, 1790, 2 Sm.L. 531, authorized the sheriff to appoint a jailer with the approval of the court, but it became customary for sheriffs to make such appointments without the court's approval. In Duncan v. Klinefelter, 5 Watts 141, such practice was recognized as legitimate.

"In Scarborough v. Thornton, 9 Pa. 451 (1849), the Supreme Court said (p. 453) : 'In some of the counties of the commonwealth, the sheriff himself resides in the jail . . . and superintends personally the custody of the prisoners . . . In other counties, the custom has been for the sheriff to appoint a jailer . . .'

"In the days when imprisonment for debt was not unusual, it was repeatedly held that the sheriff was liable to the creditors for the escape of the debtor from the jail.

"In Keim v. Saunders, 120 Pa. 121, it is recited (p. 129) : 'There is no doubt that an escape, according to the common law since the day of Rolle's Abridgment, has uniformly fixed [the liability upon] the jailer, who can avail himself of nothing as matter of defense but an act of God or the common enemy, Green v. Hern, 2 P. & W. 167. There are cases not only in England but in this state where the sheriff has been held liable for the escape of a prisoner confined for debt in the county jail, and there is no doubt of such liability where the sheriff is the actual keeper of the jail, or controls it by means of a deputy appointed by him. Such is the case in nearly all the counties in this state.'

"In more recent years the tendency has been to relieve the sheriff in larger counties of the control of the jail by substitution of a warden or similar provision."

The last above-quoted paragraph is supported by a series of legislative enactments which are further evidence of the intent of the legislature with respect to the management and control of the county jail or prison in counties of the sixth, seventh and eighth classes. The Act of May 10, 1921, P. L. 470, provides:

"In each county of the fifth class the government, management and control of the jail or county prison, and the safe-keeping, care, maintenance, discipline and employment of prisoners therein, is exclusively vested in the county commissioners and the officers appointed by them as hereinafter provided. The responsibility of the sheriff of each of said counties for the safe-keeping, care and support of the prisoners shall cease and determine on their delivery to the proper authorities at the jail; *and the sheriff shall no longer be furnished a residence in said institution.* . . . Where county commissioners shall appoint a warden and fix his salary, the warden shall reside in the jail building . . . The warden of said prison shall also take charge of all persons lawfully committed by any court, magistrate, justice of the peace, or alderman, or other officer having power to commit to prison, and said warden shall be responsible for the safe keeping, care, maintenance, discipline, employment and discharge of all persons so committed, *in the same manner and to the same extent that sheriffs, jailors, or other keepers of county jails or prisons are now by law held liable.*" (Italics supplied.)

By the Act of May 16, 1921, P. L. 579, the legislature provided for the "better management of the jails or county prisons in the several counties of this Commonwealth of the third and fourth classes by creating, in such counties, a board to be known by the name and style of inspectors of the jail or county prison, with

authority to appoint a warden of such prison, and by vesting in said board, and the officers appointed by it, the safe-keeping, discipline, and employment of prisoners and the government and management of said jails or county prisons."

Section 5 of this last cited act, relating to third and fourth class counties, provides:

"Provided that in all counties to which this act applies, *where the sheriff is now the acting warden or keeper of the county jail or prison and has his residence therein, this act shall not take effect until the expiration of the term of office of the sheriff now so acting as jail or prison warden or keeper.*" (Italics supplied.)

This last cited act, relating to counties of the third and fourth class, was amended by the Act of May 2, 1949, P. L. 809, by changing the provisions relating to fixing salaries of wardens, deputies, assistants and keepers. It provided that the number and compensation of such deputies, assistants and keepers shall be fixed by the salary board, and further that "The board shall appoint a warden of the prison, who shall reside in the building".

Both the Act of May 10, 1921, relating to the counties of the fifth class, and the Act of May 16, 1921, relating to the counties of the third and fourth classes, as amended, recognize that prior to their enactment, the government, management and control of the jail or county prison and the safekeeping, care, maintenance, discipline and employment of the prisoners therein was vested in the sheriff, and that to fulfill these responsibilities, the sheriff had been furnished a residence in the jail or prison.

It is entirely consistent with the legislature's intent to relieve the sheriff in these larger counties of the third, fourth and fifth classes of the management and control of the jail or prison, by substitution of the

warden, that they *required* the warden to reside in the jail residence, in lieu of the sheriff, in order that such warden might fulfill his responsibilities as to the management and control of the jail or prison.

Only nine days after the last above-cited amending act, May 2, 1949, the legislature by Act 359 of May 11, 1949, P. L. 1191, sec. 1, 61 PS §419.1, as hereinabove quoted, confirmed the then existing common law in regard to the responsibility of the sheriff to manage and control the jail or prison in smaller counties of the sixth, seventh and eighth classes. Further, this Act 359 falls in that category or body of law relating to the government and regulation of jails, prisons and other correctional institutions and the committment thereto and maintenance and care of prisoners or inmates therein as specifically excluded from The County Code of August 9, 1955, P. L. 323, sec. 103(12).

Continuing with its consistent intent to relieve the sheriff in the larger counties of the management and control of the jail or prison, the Act of July 29, 1953, P. L. 1013, repealed the above-cited Act of May 10, 1921, P. L. 470, relating to fifth class counties and, in effect, reenacted the Act of May 2, 1949, P. L. 809, relating to third and fourth class counties and amended it by adding fifth class counties. By section 1, it provided:

"That the persons now holding the following offices and their successors, in all counties of this Commonwealth of the third, (and), fourth, *and fifth* classes, shall compose a board, to be known by the name and style of inspectors of the jail or county prisons, to wit: The judges of the court of quarter sessions, the district attorney, the sheriff, the controller, and the commissioners of each of said counties; in which board, and the officers appointed by it, the safe-keeping, discipline, and employment of prisoners, and the government and management of said institution, shall be exclusively

vested; and that the present responsibility of the sheriff of each of said counties in regard to the safe-keeping of the prisoners shall cease and determine on their committal to said prison, *and such sheriff shall no longer be furnished a residence in said institution.*" (Italics supplied.)

It also provided:

"The board shall appoint a warden of the prison, who shall reside in the building. The warden, subject to the approval of the board, may appoint such deputy or deputies, assistant or assistants, keeper or keepers, that may be required in the taking care of the prison. The number and compensation of such deputies, assistants, or keepers shall be fixed by the salary board."

At that time, it was not the legislature's intention to relieve the sheriff in counties of the sixth, seventh and eighth classes of his responsibility for management and control of the county jail or prison and the safe-keeping, care, maintenance and discipline and employment of prisoners therein. If it so intended, it would have included in the amendment "sixth, seventh and eighth classes" the same as it had added "fifth" to the provisions for third and fourth classes. The legislature having thus treated the subject of management and control, etc., of county jails and prisons as a separate body of law and excluded it from the provisions of The County Code of 1955, it cannot now be said, as defense counsel argues, that the phrase "Except as may be otherwise provided by law" (sec. 2328), refers only to counties of the third, fourth and fifth classes and not also to counties of the sixth, seventh and eighth classes.

II

The same Act 359 of May 11, 1949, P. L. 1191, sec. 1, 61 PS §419.1, vests the same management, control, etc., of the county jail or prison, in the officers and employes appointed by the sheriff. It provides: ". . . and the sheriff shall from time to time, with the approval of

the county salary board, appoint as many keepers and other employees of said jail or prison as the salary board shall approve. The compensation of such keepers and employes shall be fixed by the county salary board in the same manner as the compensation of other appointed county officers and employes."

For the reasons hereinabove stated, Act 359 of May 11, 1949, is controlling as to the authority of the sheriff, with the approval of the county salary board, to appoint keepers and other employes of the county jail or prison. "Keepers and other employes," in accordance with common understanding and usage, would include "matron," or such other title or designation as the sheriff might chose. With respect to this appointive authority of the sheriff, it is as well founded in the common law as the sheriff's own responsibilities for the management and control of the county jail. In Scarborough v. Thornton, 9 Pa. 451 (1848), the Supreme Court said:

"But be this as it may, no one will pretend to question the sheriff's right to appoint deputies to perform duties which appertain to the office and that he may designate one of these with the title of jailer."

This same opinion quotes Duncan v. Klinefelter, 5 Watts 141, as follows:

"The most important of the duties of such an officer and one which he assumes to perform by the acceptance of the office is to keep safely all prisoners lawfully committed to his custody until discharged by due course of law."

By this Act 359 of May 11, 1949, the legislature merely confirmed and maintained the common law and updated it by including a provision with respect to the county salary board to correspond with the provisions relating to compensation of other appointed county officers and employes. By this act, the legislature has recognized the responsibility imposed upon the sheriff

for the management and control of the county jail or prison and the safekeeping, care, maintenance, discipline and employment of the prisoners therein, and that, of necessity, he must have the authority to appoint those persons to assist him in fulfilling these responsibilities.

Section 2328 of The County Code of 1955, relied upon by the commissioners as authority for them to appoint a superintendent and matron for the county jail, is a subordinate subsection (d) of art. XXIII, "Grounds and Buildings". This subsection (d) is entitled "Policing, Administration and Public Order of Grounds and Buildings": 16 PS §2325. It is noted that the first paragraph of section 2328, as above quoted, is not limited to county jail or prisons but also includes "workhouse or detention house". Further, the second paragraph of the same section reads:

"Every such institution which shall hereafter be erected or remodeled shall be so constructed as to reflect the declared objectives and policies of the county with respect to the number, type, length of stay, and program requirements of prisoners to be housed therein. Plans for the construction or remodeling of any county penal facility shall be submitted by the County Commissioners to the Department of Justice for its review and approval."

Although the question is not before this court, it is conceivable that counties of the sixth, seventh and eighth classes might maintain workhouses or detention houses separate and apart from the county jail or prison, and that such might be administered by the county commissioners through the appointment of a superintendent and matron and other officers. However, accepting section 2328 in the context in which it is written, it is part of that portion of The County Code relating to the administration and maintenance of public grounds and buildings. If it has any applica-

tion in seventh class counties, it is limited to the maintenance of the jail structure and its grounds.

## III

In Commonwealth ex rel. v. Elliott, Sheriff, supra, Mercer County was a county of the sixth class at the time of the sheriff's election. By proclamation of the Governor of Pennsylvania on January 6, 1941, Mercer County became a county of the fifth class. Following the Governor's Proclamation declaring Mercer County, a county of the fifth class, the county commissioners undertook to assume control and management of the jail and appointed a warden thereof in accordance with the Act of May 10, 1921, P. L. 470, supra. The warden so appointed by the county commissioners, after filing the required security, demanded of the sheriff custody of all prisoners in the county jail and possession of the premises within the jail occupied by the sheriff as his residence. The sheriff refused to comply with this demand. Therefore, that court had first to decide whether on the date of his election, at which time Mercer County was a sixth class county, said sheriff had the right to maintain his residence within the county jail and, if so, did such right constitute an emolument of the office of sheriff? The Mercer County jail was also so constructed as to include a sheriff's residence. Thus, the Mercer County court was, in fact, faced with a factual background and question of law similar to the one before this court. Part of the Mercer County court's opinion recognizing the common-law duties, rights and privileges of the sheriff is quoted above. Additional light is shed upon the right of the sheriff to reside in the county jail residence by the following portion of this same opinion:

"The duty of the sheriff is to care for the prisoners in the place provided by the county for their detention. This duty is affected to some extent by the facilities which the county provides; consequently that duty is

to care for the inmates of the jail to the extent of the facilities.

"The responsibility of the sheriff to prevent escape is undoubted, but he is likewise required to feed the prisoners, to minister to the sick among them, to guard them against the peril of fire, and to protect them from injury by fellow-prisoners. For failure so to do, the sheriff might be subjected to a civil suit for damages, nor are we prepared to say that the county would be free of liability for the sheriff's negligence in this regard. Provision for the sheriff's residence within the county jail implies that the citizens were aware of the responsibility of the sheriff and of the county. It must be presumed, therefore, that the citizens conceived that full performance of these duties required the continuous presence of the sheriff, or his representative, in the jail. Provision for the sheriff's residence in the jail having been made, we are of the opinion that he was bound to constant attendance upon the prisoners, which is possible only by residence within the jail. We are of the opinion that the duty of the sheriff, either personally or by deputy, to be constantly in attendance upon the jail carries with it the reciprocal right to residence therein. This interpretation has been sactioned by long usage . . . In County of Wayne v. Taylor, Sheriff, no. 117, January term, 1937, Court of Common Pleas of Wayne County, Judge Swoyer ruled that the sheriff has, under the common law, the right of residence in the jail, 'and that the county commissioners are required to furnish the sheriff (as keeper of the jail) residential quarters either in the county prison or upon the curtilage thereof.' Both the legislature and the courts have noted that, except in the larger counties, the custom has been for the sheriff to reside in the jail."

Indeed, each of the above-cited Acts of May 10, 1921, P. L. 470, May 16, 1921, P. L. 579, May 2, 1949, P. L.

809, and July 29, 1953, P. L. 1013, relating to counties of the third, fourth and fifth classes, and by which the sheriff was relieved of the management and control, etc., of the county jail or prison, provided:

*"And the sheriff shall no longer be furnished a residence in said jail institution."* (Italics supplied.)

On the basis of the foregoing, the Mercer County court held that the sheriff of Mercer County had the right, established by law, to maintain his residence in the county jail, and, further, that such right was an emolument of the office of sheriff. In so finding, the Mercer County court also said:

"If it be argued that by implication the sheriff is deprived of residence within the jail, the answer is that the implication is not strong enough to destroy the right of residence which is supported by the common law. A right which rests upon the common law is as fully protected by the Constitution as one which has the support of a statute."

However, this court must consider the fact that Act 359 of May 11, 1949, P. L. 1191, although otherwise confirming and maintaining the common law with respect to the sheriff's responsibility to manage and control the county jail or prison, and his authority to appoint keepers or other employes of said jail or prison, declared that "The sheriff and his family *may* be furnished a residence in the county jail or prison . . ." (Italics supplied.)

The word "may" is permissive. It is not mandatory. However, in addition to the reasons set forth in discussion of issues I and II, we adopt the reasoning of Commonwealth ex rel. v. Elliott, Sheriff, supra. The County of Elk, approximately 80 years ago, constructed as an integral part of the jail building, a sheriff's residence and for such period has maintained it. It is recognized that during this period the duly elected sheriff of Elk County has not always exercised his right to reside

with his family in such jail residence. Nevertheless, it is the *right* of the sheriff to occupy such residence that is the issue before the court. Whether or not prior sheriffs chose to exercise this right or, in lieu thereof, permitted their deputies to reside therein, is of no consequence. The right of the sheriff to occupy the jail residence is established by common law, and the County of Elk having provided such jail residence as *permitted* by law, the duly elected sheriff is entitled to rely upon such existing facts and enjoy the privileges thereof, not only that he might fulfill his obligations as such sheriff but also as an emolument of his office.

This proceeding is under the Uniform Declaratory Judgments Act. Counsel for defendants, Carl Sandberg and Ruth Sandberg, contend that such defendants should be removed as parties in their proceeding in that their occupancy of the county jail residence is merely derivative and under direction of the county commissioners. Section 11 of this act, as amended by section 2 of the Act of July 25, 1963, P. L. 305, 12 PS §841, provides:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of the persons not parties to the proceeding."

Defendants, Carl and Ruth Sandberg, both claim an interest which would be affected by the declaration, whether such interest be derivative or direct. Therefore, in keeping with the intent of the act and in accordance with the foregoing section, the Sandbergs are not removed as parties defendant.

### JUDGMENT

And now, to wit, March 22, 1965, for the reasons set forth in the foregoing opinion, we conclude and declare:

1. The government, management and control of the

Elk County jail or prison and the safekeeping, care, maintenance, discipline and employment of the prisoners therein, is vested by law in the sheriff of Elk County and the officers and employes appointed by him as provided by the Act of May 11, 1949, P. L. 1191, sec. 1.

2. The Elk County Sheriff shall from time to time, with the approval of the county salary board, appoint as many keepers and other employes of said jail or prison as the salary board shall approve, including, but not being limited to, persons designated by said sheriff as "deputy", "jailor", "matron" or by such other designation as said sheriff might choose.

3. The Sheriff of Elk County and his family, by virtue of his office, have the right to reside in the Elk County jail residence. Said existing jail residence shall be furnished to, and maintained for, said sheriff and his family by the County of Elk as an emolument of his office and without further charge or cost to said sheriff and his family.

4. The Elk County Commissioners are responsible for providing the funds necessary to furnish the personnel, equipment, supplies and prisoners' maintenance items needed by the Sheriff of Elk County to enable him to discharge the county jail or prison functions in compliance with the obligations imposed upon him by law and regulations of the Commonwealth of Pennsylvania.

5. The Sheriff of Elk County shall sit as a member of the county salary board whenever said board shall consider the number or salaries of the deputies, jailors, matrons or other employes of the county jail or prison, including his wife as matron of the Elk County jail.

6. The Commissioners of Elk County on January 6, 1964, and are now, without authority to appoint Carl Sandberg and Ruth Sandberg, or any other persons, superintendent and matron, respectively, of the Elk County jail.

556

7. The Sheriff of Elk County acted within his lawful authority when, by letter dated November 13, 1964, he notified Carl Sandberg and Ruth Sandberg to remove from the residence quarters in Elk County jail within 30 days therefrom in order that he and his wife might occupy the jail residence and assume charge of the prisoners in the Elk County jail.

8. The employment of Carl Sandberg as superintendent and Ruth Sandberg as matron of the Elk County jail and their right of occupancy of said jail residence terminated December 14, 1964.

9. The said Carl Sandberg and Ruth Sandberg shall vacate said Elk County jail residence and deliver possession thereof and the custody and control of the prisoners therein, if any there be, unto Raymond Krasinski, Sheriff of Elk County, at such date and time as shall be mutually agreed upon between the parties, but, in no event, no later than April 15, 1965.

10. The costs of the within proceedings shall be paid by the County of Elk.